UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
                                  :
United States of America,         :     12 Crim. 185 (LAP)
                                  :
                                  :     MEMORANDUM & ORDER
     - v. -                       :
                                  :
Jeremy Hammond,                   :
                                  :
          Defendant.              :
                                  :
----------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2-21-13

LORETTA A. PRESKA, Chief United States District Judge:

          Defendant Jeremy Hammond ("Defendant" or "Hammond")

has moved under 28 U.S.C. § 455 to disqualify this Court from

presiding in this action [dkt. no. 30].  Defendant claims that

an appearance of partiality and an appearance of financial

interest are too strong to be disregarded because (1) online

postings purport to show that Thomas J. Kavaler, this Court's

husband, is an alleged victim of some of the charged offense

conduct, and (2) Mr. Kavaler's law firm represents, in unrelated

matters, "other prominent victims" of some of the charged

offense conduct.  For the reasons that follow, the motion is

DENIED.

I.   BACKGROUND

          Defendant is charged in a superseding indictment [dkt.

no. 9] with participating in a series of computer break-ins and

data thefts from computer networks operated by various

governmental and business entities as part of the "LulzSec" and "AntiSec" computer hacking groups, which were loosely affiliated with the online group "Anonymous." (See Indictment, S1 12 Crim. 185 (LAP) ("Indictment") [dkt. no. 9].) Specifically, Count Two of the superseding indictment charges Defendant with conspiring to commit computer hacking, in violation of 18 U.S.C. § 1030(b), in connection with a cyber attack in June 2011 on computer systems used by the Arizona Department of Public Safety, a state law enforcement organization. (Id. ¶¶ 17-26, 26(f)-29.) Counts Three, Four, Five, and Six charge Defendant with another count of conspiracy to commit computer hacking, in violation of 18 U.S.C. § 1030(b) (Id. ¶¶ 30-39); substantive computer hacking, in violation of 18 U.S.C. § 1030(a)(5)(A), 1030(b), 1030(c)(4)(B)(i), and (2) (Id. ¶¶ 40-41); conspiracy to commit access devise fraud, in violation of 18 U.S.C. § 1029(b)(2) (Id. ¶¶ 42-47); and aggravated identity theft, in violation of 18 U.S.C. § 1028(A) and (2) (Id. ¶¶ 48-49). Counts Three through Six are all charged in connection with Defendant's alleged participation in the "Stratfor Hack," a hack of the computer systems of a private, subscription-based provider of information analysis services, Strategic Forecasting, Inc., known as Stratfor. (See generally id. ¶¶ 36-49.)

In connection with the Stratfor Hack, and insofar as the instant motion is concerned, Defendant and his co-conspirators are alleged to have, among other things:

> i. stole[n] confidential information . . . including approximately 60,000 credit card numbers and associated data belonging to clients of Stratfor, including the cardholders' names and addresses, as well as the cards' security codes and expiration dates; records for approximately 860,000 Stratfor clients, including individual user IDs, usernames, encrypted passwords, and email addresses; . . . and internal Stratfor corporate documents;

> ii. used some of the stolen credit card data to make at least $700,000 worth of unauthorized charges;

> . . .

> v. publicly disclosed confidential data that had been stolen from Stratfor's computer servers, including, . . . names, addresses, credit card numbers, usernames, and email addresses for thousands of Stratfor clients . . . ; and

> vi. uploaded data stolen from Stratfor onto a server located in the Southern District of New York.

(Indictment, at 28-29.)[1]

On January 20, 2012, a class action lawsuit was filed in the U.S. District Court for the Eastern District of New York against Stratfor on behalf of "all persons, corporations, or

---

[1] In the Government's Memorandum in Opposition to Defendant's Motion for Disqualification ("Gov't Br.") [dkt. no. 34], the Government notes that "at least approximately 200 gigabytes of confidential information from Strafor's computer systems" is alleged to have been stolen as part of the Stratfor Hack. (Gov't Br., at 4.) As explained in the Government's Brief, "[a] gigabyte is a measure of data storage equivalent to approximately 675,000 pages of text." (Id. at n.1.)

entities whose financial and/or personal information was obtained by third-parties due to the [Stratfor Hack]." See Am. Compl. ¶ 31, <u>Sterling v. Strategic Forecasting, Inc.</u>, No. 12 Civ. 297-DRH-ARL (E.D.N.Y. Feb. 8, 2012), dkt. no. 3. The suit settled on November 15, 2012. See Am. Final Order and J. Regarding Class Action Settlement, <u>Sterling</u>, No. 12 Civ. 297-DRH-ARL (Nov. 15, 2012), dkt. no. 29 ("Stratfor Class Action Settlement Order"). In the Stratfor Class Action Settlement Order, the Court certified the class action on behalf "of those who are current or former subscribers to the Stratfor Service on December 24, 2011, whose credit card information Stratfor had on file on December 24, 2011, and whose credit card information was obtained by third-parties due to the breach of Stratfor's computer storage systems." See Stratfor Class Action Settlement Order ¶ 3. The class action member list included approximately 882,137 records. See Decl. of Andrew Beckord ¶ 3, <u>Sterling</u>, No. 12 Civ. 297-DRH-ARL (Sept. 10, 2012), dkt. no. 24-3.

On November 28, 2012, Elizabeth Fink, counsel for Defendant notified the Court during a telephone conference that on or about November 22 or 23, 2012, she had received from a reporter an email containing a link to an "anonymous" website purportedly listing all of the victims of the Stratfor Hack (the

"Dazzlepod list").[2]  (Transcript of Telephone Conf., at 2 (Nov.

28, 2012) ("Transcript") [dkt. no. 35].)  Ms. Fink then informed

the court that among those listed as a Stratfor subscriber on

the anonymous website was Thomas J. Kavaler, husband of this

Court, along with Mr. Kavaler's email address at Cahill Gordon &

Reindel LLP ("Cahill Gordon"), the law firm at which he is a

partner.  (See id. at 2-3; see also Def.'s Br., at 2-3; Gov't

Br., at 5-6.)  The next day, Ms. Fink provided this Court and

the Government with the following printouts reflecting the

information she relayed to the Court: (1) the email she received

from the reporter, (2) the article to which that email linked

(which appeared on the website #FreeAnons, Anonymous Solidarity

Network, http://freeanons.org), (3) a webpage to which a link in

the article directs readers, which is a screenshot of the part

of the Dazzlepod list containing Mr. Kavaler's email address,

and (4) a webpage to which another link in the article directs

readers, which is a screenshot of Mr. Kavaler's profile page

from Cahill Gordon's website.[3]  Although Ms. Fink noted during

---

[2] According to Defendant's Memorandum of Law in Support of
Defendant's Motion for Disqualification [dkt. no. 32], the
website http://dazzlepod.com/stratfor contains a list of emails
made available so that Stratfor users can check if they were
victims of the hack. (See Memo. of Law in Support of Def.'s Mot.
for Disqualification ("Def.'s Br.") at 2.)
[3] A copy of the email from the reporter is attached to the
Affirmation of Elizabeth M. Fink [dkt. no. 31] as Exhibit A.
(Aff. of Elizabeth M. Fink, Dec. 6, 2012, ("Fink Aff.") Ex. A.)
(cont'd)

the telephone conference that she believed Mr. Kavaler's credit card information may have been disseminated as a result of the hack, a review of the copies submitted to this Court immediately dispels any such concerns.[4]

On December 6, 2012, Defendant moved this Court for disqualification (see [dkt. nos. 30, 32].)  In addition to recounting most of the information noted above, Defendant's Brief also provided information to suggest the breadth to which the Stratfor Hack affected clients of Cahill Gordon and, thus, the financial interests of Mr. Kavaler.  (See Def.'s Br., at 1-3.)  Specifically, Defendant notes that Mr. Kavaler has been a partner at Cahill Gordon since 1980 and is one of six members of the law firm's management committee.  (Id. at 3.)  Additionally, Defendant states that Merill Lynch and AIG are major clients of Cahill Gordon and alleges that these entities were also victims of the Stratfor Hack.  According to Defendant,

_____

(cont'd from previous page)
Defendant, however, did not attach to his Brief copies of the other three items delivered to the Court.  As such, the Court has attached Ms. Fink's full submission to the Court, as received on November 29, 2012, as Exhibit 1 of this Order.
[4] Upon visiting the Dazzlepod website, one learns that a person's email address is preceded by a "cc" if that user's credit card information is believed to have been compromised.  See Stratfor, Dazzlepod (last visited Feb. 21, 2013), https://dazzlepod.com/stratfor (updated on Jan. 2, 2012, to reflect this distinction).  Mr. Kavaler's email address is not preceded by a "cc."  (See Ex. 1, at 4.)

Merrill Lynch appears to have been particularly impacted by the hack; over 800 accounts associated with Merrill Lynch email addresses were compromised. Cahill Gordon has overseen hundreds of millions of dollars in investment banking arrangements for Merrill Lynch. In 2006, Cahill Gordon acted as special counsel to Merrill Lynch, in their capacity as Administrative Agent, on an investment banking arrangement with another Stratfor client, AES Corporation, brokering a $600,000,000 credit agreement between the two companies. According to a news release dated November 27, 2012[,] on the Cahill Gordon website, the firm recently represented Merrill Lynch in another investment banking deal involving an offering of $350,000,000.

(Id.) Defendant further alleges, "[u]pon information and belief, [that] more than twenty Cahill Gordon clients were victims of the Stratfor hack."[5] (Id.)

Upon filing Defendant's motion for disqualification and the associated brief in support, Ms. Fink also filed an affirmation of her own in support of Defendant's motion. (See Fink Aff.) Attached to the Fink Affirmation is a compilation of twenty-three printouts from websites offering their versions of the information Ms. Fink relayed to the Court on November 28th (see id. Ex. B) and a copy of this Court's written submission to the Senate Judiciary Committee provided during the confirmation process in 1992 for the purposes of affirming its commitment to

---

[5] Defendant supports these claims by citing its own "non-exhaustive search of the dazzlepod list of Stratfor clients." (Id. at n.5)

following the Code of Conduct with regards to recusal (see id. Ex. C).

The Government responded to Defendant's motion on December 21, 2012, and therein informed this Court that

> [a]gents of the Federal Bureau of Investigation have investigated the defendant's claims regarding the theft of Mr. Kavaler's personal data as a result of the Stratfor Hack, including reviewing the data that the Government alleges the defendant stole from Stratfor and then passed to a cooperating witness (which was produced to the defendant in discovery, and confirming that information with Stratfor. Based on this investigation, the FBI has determined that the only personal identifying information related to Mr. Kavaler that was "stolen" or disclosed as a result of the hack was Mr. Kavaler's publicly available law firm email address; Stratfor's data did not contain any credit card information associated with Mr. Kavaler. Stratfor's data does contain one record of a subscription associated with Mr. Kavavler's Cahill Gordon email address for the period between March 18, 2008[,] and April 1, 2008, but, as set out [in Mr. Kavaler's sworn affirmation], Mr. Kavaler has no recollection of that two-week subscription in 2008.

(Gov't Br., at 7.)

Attached to the Government's Brief is a sworn affirmation from Mr. Kavaler. (See Affirmation, Dec. 21, 2012, Gov't Br. Ex. A. ("Kavaler Aff.") [dkt. no. 34-1].) In his affirmation, Mr. Kavaler states that he "regularly receive[s] unsolicited emails from businesses and other organizations . . . [and] receive[s] from Stratfor from time to time emails that contain, among other things, newsletters and solicitations to become a subscriber or to purchase Stratfor's products."

8

(Kavaler Aff. ¶ 5.)  Mr. Kavaler continues by attesting that he
has "never provided Stratfor with [his] credit card number or
any other personal financial or identifying information such as
[his] name, address, Social Security number or telephone number"
and states explicitly that he neither recalls requesting the
March 18, 2008, to April 1, 2008, subscription nor knows
anything about it.  (Id. ¶ 6.)  According to Mr. Kavaler, "only
[his] publicly available Cahill Gordon email address was
purportedly disclosed as a result of the [] data theft from
Stratfor . . . [and]other than that publicly available Cahill
Gordon email address, Stratfor does not have any personal
information of [his] that could have been stolen and
disseminated, and never did have such information."  (Id. ¶ 7.)
Finally, Mr. Kavaler states that he "never received any
notification that [he was] a member of [the Stratfor Class
Action] and [has] never received any benefit in connection with
that or any other lawsuit filed in connection with Stratfor."
(Id. ¶ 8.)

        Defendant, who upon request from his counsel and with
the consent of the Government had until February 4, 2013, to
reply to the information included in the Government's Brief (see
[dkt. no. 37], did not file a reply to the Government's
opposition to his motion for disqualification.  By Order dated
February 13, 2013, this Court informed the parties that it

considered the matter fully briefed and stated that the parties would have an opportunity to present oral argument on February 21, 2013.

II. DISCUSSION

A.   The Law

The decision to grant or deny a recusal motion is committed to the sound discretion of the judge to whom the motion is directed.  See In re Drexel Burnham Lambert, Inc., 861 F.2d 1307, 1312 (2d Cir. 1988), reh'g denied, 869 F.2d 116 (2d Cir. 1989).  A judge must "carefully weigh the policy of promoting public confidence in the judiciary against the possibility that those questioning [her] impartiality might be seeking to avoid the adverse consequences of [her] presiding over their case."  Drexel, 861 F.2d at 1312.  Indeed, the public interest mandates that judges not be intimidated out of an abundance of caution into granting disqualification motions:  "A trial judge must be free to make rulings on the merits without the apprehension that if he makes a disproportionate number in favor of one litigant, he may create the [appearance] of bias," and "'[a] timid judge, like a biased judge, is intrinsically a lawless judge.'"  In re Int'l Bus. Mach., 618 F.2d 923, 929 (2d Cir. 1980) (quoting Wilkerson v. McCarty, 336 U.S. 53, 65 (1949) (Frankfurter, J., concurring)).  Thus, a judge weighing recusal "must ignore rumors, innuendos, and erroneous information," In

re United States, 666 F.2d 690, 695 (1st Cir. 1981), and avoid

granting recusal motions for reasons that are "remote,

contingent, or speculative," Drexel, 861 F.2d at 1312.

Finally, "[a] judge is as much obliged not to recuse [herself]

when it is not called for as [she] is obliged to when it is."

Drexel, 861 F.2d at 1312; see also In re Aguinda, 241 F.3d 194,

201 (2d Cir. 2001) ("[W]here the standards governing

disqualification have not been met, recusal is not optional;

rather, it is prohibited."); McCann v. Communications Design

Corp., 775 F. Supp. 1506, 1533 (D. Conn. 1991) (grant of an

unfounded motion would "undermine public confidence in the

judiciary, for the judiciary would appear [clearly] manipulated

. . .").

        Defendant asserts that disqualification is required

here pursuant to two subsections of Section 455: (a) and (b).[6]

---

[6] Defendant's Brief also relies on Canon 3C of the Code of
Conduct for United States Judges (a source of law to which the
Government does not cite), noting that Canon 3C tracks 28 U.S.C.
§ 455, (see Def.'s Br., at 5-6). Although compliance with the
Code by all those authorized to perform judicial functions is
essential to our system of justice, the Court notes that "[t]he
Code of Conduct contains no enforcement mechanism. The Canons,
including the one that requires a judge to disqualify himself in
certain circumstances are self-enforcing." United States v.
Microsoft Corp., 253 F.3d 34, 114 (D.C. Cir. 2001) (internal
citations omitted). The only remedies for violation of the Code
are the institution of a disciplinary complaint or a motion to
disqualify pursuant to 28 U.S.C. §§ 144 or 445. Id.
Accordingly, particularly in light of the similarity in language
(cont'd)

Under 28 U.S.C. § 455(a), a district judge shall recuse herself where "[her] impartiality might reasonably be questioned." "Disqualification under section 455(a) requires a showing that would cause 'an objective, disinterested observer fully informed of the underlying facts [to] entertain significant doubt that justice would be done absent recusal.'" United States v. Lauersen, 348 F.3d 329, 334 (2d Cir. 2003) (citation omitted); see also Aguinda, 241 F.3d at 201 ("'[D]isqualification for lack of impartiality must have a reasonable basis.'" (quoting S. Rep. No. 93-419, at 5 (1973) (emphasis in original))). While the focus of Section 455(a) is on appearances and applies even if the judge "is pure in heart and incorruptible," see Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 860 (1988), the standard is not to be applied "by considering what a straw poll of the only partly informed man-in-the-street would show." United States v. Bayless, 201 F.3d 116, 127-28 (2d Cir. 2000). Rather, a judge is presumed to be impartial and the moving party bears a substantial burden to overcome this presumption. See Farkas v. Ellis, 768 F. Supp. 476, 478 (S.D.N.Y. 1991). Moreover, where a judge is accused of having an interest in the victim of a crime, "recusal is required only where the extent of

---

(cont'd from previous page)
between Canon 3C and Section 445, the Code will not be treated separately.

the judge's interest in the crime victim is so substantial, or the amount that the victim might recover as restitution is so substantial, that an objective observer would have a reasonable basis to doubt the judge's impartiality." Lauersen, 348 F.3d at 336-37.

The relevant statute also provides that a judge shall disqualify herself when she knows that she, "individually or as a fiduciary, or [her] spouse . . . has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding." § 455(b)(4).[7] Similarly, recusal is also required where a judge or her spouse "[is] known by the judge to have an interest that could be substantially affected by the outcome of the proceeding." § 455(b)(5)(iii). Even though knowledge on behalf of a judge is not required under subsection (a) but is required under subsection (b), the Court notes that subsection (b) is "a somewhat stricter provision" of the statute because recusal is required once grounds for disqualification arise even if insubstantial or absent an appearance of impropriety. See Liljeberg, 486 U.S. at 860 & n.8.

---

[7] A "financial interest" is defined as meaning "ownership of a legal or equitable interest, however small, or a relationship as director, adviser, or other active participant in the affairs of a party." Id. at (d)(4).

B.    Application

Defendant advances two arguments for why, he claims, a reasonable, objective observer might question the Court's impartiality:  (1) this Court's husband, Mr. Kavaler, is a purported victim of some of the charged offense conduct and (2) the law firm where Mr. Kavaler is a member represents, in unrelated matters, other purported victims of some of the charged offense conduct.  When confronted with any such allegations, the Court takes seriously its obligation to carefully weigh the policy of promoting public confidence in the Judiciary against the possibility that those questioning its impartiality might be seeking to avoid its presiding over their cases.

In weighing these considerations, the Court notes at the outset that Defendant's motion and the accompanying exhibits are replete with conclusory, hearsay allegations pertaining to Mr. Kavaler's status as a victim of the Stratfor Hack and as a party with financial interests in this matter.  Aside from Ms. Fink's own affirmation recounting the manner in which she became aware of the online posting including Mr. Kavaler's name, Defendant's submissions are devoid of reliable evidence in support of the breadth to which this Court's personal involvement in this case is allegedly implicated.  In so far as the news reports attached to Defendant's motion are evidence

that "public confidence has already been shaken" in this Court's perceived impartiality (see Def.'s Br., at 7), the Court reminds Defendant that the standard for disqualification is not to be applied "by considering what a straw poll of the only partly informed man-in-the-street would show," Bayless, 201 F.3d at 126-27, and that the Court should avoid granting recusal motions that are "remote, contingent, or speculative," Drexel, 61 F.2d at 1313.  Thus, the Court observes that all of these clippings base their reporting on the Dazzlepod list of victims and unattributed rumors, and none of the clippings contains any indicium that the writer has considered the full set of underlying facts, as would an objective, disinterested observer, see Lauersen, 348 F.3d at 334.  (See generally Fink Aff. Ex. B.)

On the other hand, the Government has detailed to this Court the substance of its own investigation into the allegations underlying the instant motion.  The FBI's review of the stolen data indicates that the only personal identifying information related to Mr. Kavaler that was disclosed as a result of the Stratfor Hack was his publicly available Cahill Gordon email address.  Defendant (who is in possession of the same material reviewed by the FBI) did not file a reply to the Government's Brief containing this information and has yet to offer any evidence contradicting the observations made by the Government.

Additionally, according to Mr. Kavaler's undisputed sworn affirmation, he never provided his credit card information or any other personal financial or identifying information to Stratfor,[8] never received any notification of the Stratfor class action or information that would lead him to believe that he was a member of the class or victim of the hack, and has never received any benefit from the Stratfor Class Action Settlement Order. (<u>See</u> Kavaler Aff. ¶¶ 6, 8.) Also, to the extent that there is a record of a two-week subscription in Mr. Kavaler's name for March 18, 2008, to April 1, 2008, Mr. Kavaler has declared under penalties of perjury that he does "not recall requesting that subscription or anything about it" and is unaware of any personal information of his that Stratfor could have other than his publicly available Cahill Gordon email address. (<u>Id.</u> ¶¶ 6-7.)

Turning then to applying the evidence in the record to the legal arguments advanced in favor of disqualification, Defendant's first argument turns on the risk that the perception of this Court's impartiality might be undermined because Mr. Kavaler is alleged to have been a victim of the hack. The Court, while commending Defendant's interest in upholding the

---

[8] As previously noted, this is further supported by the absence of a "cc" before Mr. Kavaler's email address on the Dazzlepod list.

public's trust in our system of justice, finds that granting recusal here actually would create a <u>greater</u> risk of undermining the public's perception of the Judiciary.  In cases such as this one, "disqualification is not optional; rather it is <u>prohibited</u>."  <u>See</u> <u>Aguinda</u>, 241 F.3d at 201 (emphasis added).  To hold otherwise would be to presume that the reasonable observer would grant less credence to statements filed with this Court under penalties of perjury than to online postings by persons who, upon arming themselves with keyboards, demonstrate a penchant for typing fast and loose with the facts.  Indeed, it is the legal duty of this Court to give more weight to the former.

Upon doing so, one can only conclude that an objective, disinterested observer fully informed of the underlying facts would reason that Mr. Kavaler was not injured by the Stratfor Hack.  After all, in an age when emails are voluntarily shared routinely and disclosed publicly, the only information of Mr. Kavaler's that has been shown to have been disclosed is an email address already available publicly on his law firm's website.  Further, aside from a record of a two-week subscription that ended more than three years before the offense conduct, the record reflects no evidence that Mr. Kavaler ever provided information to Stratfor.  Therefore, the reasonable observer would conclude that any appearance of this Court's

interest in Mr. Kavaler as a victim of the crime is too
insubstantial to require disqualification.  See Laursen, 348
F.3d, at 336-37 (declining to require recusal where judge and
judge's wife owned small share of stock in company entitled to
restitution and stating that recusal is required "only where the
extent of the judge's interest in the crime victim is so
substantial, or the amount that the victim might recover as
restitution is so substantial, that an objective observer would
have a reasonable basis to doubt the judge's impartiality.").

Defendant also claims that Mr. Kavaler has a financial
or some other substantial interest requiring this Court's
recusal under Section 455(b).  In the alternative, Defendant
asserts that the perception of such is substantial enough to
require recusal under subsection (a).  As Defendant points out,
this Court, in a 1992 written submission to the Senate Judiciary
Committee, pledged its commitment to disqualifying itself where
Mr. Kavaler's financial interests are in issue, and it has
consistently upheld this pledge. (See Def.'s Br., at 4, 6; see
also Fink Aff. Ex. C.)

To advance his argument that such a conflict exists
here, Defendant cites his own review of the emails found on the
Dazzelpod list of alleged victims.  In doing so, Defendant hopes
to draw a link between the Stratfor Hack and the interests of
Cahill Gordon clients, which purportedly would then impose a

financial interest upon Cahill Gordon and, in turn, Mr. Kavaler and, in turn, this Court. Defendant's attempt to draw such a link is futile. First, Defendant fails to offer any evidence that clients of Cahill Gordon were victimized by the Stratfor Hack to any measure of harm beyond the disclosure of certain email addresses, which may or may not have been publicly available previously. Without more, Defendant's observations related to the referenced list of email addresses does not even create an inference that Cahill Gordon clients were any more injured by the Stratfor Hack than was Mr. Kavaler himself.[9] Second, such is plainly insufficient to establish a link between the instant case and the interests of these clients to a sufficient degree to then impute those interests to Cahill Gordon and, thereupon, Mr. Kavaler and, further then upon, this Court. In other words, without more, describing Defendant's observations of the posted list and any relevant financial interests as arising even to the level of remote, contingent, or speculative would be a misuse of such adjectives. Therefore, the Court must reject Defendant's invitation to disqualify itself on this theory under both subsections (a) and (b).

---

[9] The underlying facts, as detailed above, indicate that Mr. Kavaler was not injured by the Stratfor Hack.

III. CONCLUSION

Upon review of the record, Defendant has failed to carry his substantial burden of showing that a reasonable observer, with knowledge and understanding of the relevant facts, would "entertain significant doubt that justice would be done absent recusal," Lauersen, 348 F.3d at 334. Finding otherwise on a record as suspect as here would only encourage supporters of this defendant—or other defendants—to allege unsubstantiated conflicts of interest against any of my brothers and sisters of the Court until no judge remained qualified to hear his case. Therefore, accepting Defendant's invitation for recusal in this case would actually undercut the very policy Defendant prays this Court to sustain—namely, promoting public confidence in the Judiciary. Accordingly, Defendant's motion to disqualify [dkt. no. 30] is DENIED.


SO ORDERED.

Dated:      New York, New York
            February 21, 2013


                                    _Loretta A. Preska_
                                    LORETTA A. PRESKA
                                    Chief U.S. District Judge

20

# EXHIBIT 1

*US v Hammond*

On Nov 21, 2012, at 11:11 PM, "Winter, Jana" <jana.winter@FOXNEWS.COM> wrote:

@AnonymousIRC: Loretta Preska's (Judge who denied Jeremy Hammond bail) husband was a @Stratfor client, his email leaked. http://bit.ly/Y4XJ7f Conflict?

Hey. You see this?!
-------------------------------
Jana Winter
Reporter
FoxNews.com
Cell: 646-675-1251

## RECEIVED

NOV 2 9 2012

LORETTA A. PRESKA
CHIEF U.S. DISTRICT JUDGE
S.D.N.Y.

<u>#FreeAnons</u>
Anonymous Solidarity Network

- <u>F.A.Q.</u>
- <u>Wiki</u>
- <u>Donation Options and Disclsoures</u>
- <u>Resources</u>
- <u>Chat</u>
- <u>Links</u>

November 22, 2012

# Loretta A. Preska's Undisclosed Conflict

A judge at Tuesday's bail hearing, Loretta A. Preska, portrayed Jeremy as a terrorist more dangerous than murderers and sexual predators, denied his bail and, before Jeremy and a gathering of his friends and family, announced the sentence he would face if found guilty: 360 months to life. It is very difficult to find the words to express the pain we feel after the court's decision Tuesday to deny bail for Jeremy Hammond. It is an inconsolable sadness that relates those that share it to one another and solidifies our commitment to Jeremy's cause. Jeremy, only 27 years old, has spent most of his young life contributing to charitable efforts and acting on his principles to right what he perceives as wrong. Now, due to his contributions to the Anonymous collective, Jeremy could, if found guilty, spend 30+ years in prison.

Jeremy was vilified and his contributions bastardized. All of this was done with absolute impunity by those prosecuting him. The court, however, underestimated the weight of Jeremy's contributions and the passion his actions and the actions of other Anons have inspired in so many people. Most importantly, the court underestimated the Anonymous collective and the networks supporting Anons facing prosecution. There is no comfort for us so long as Anons are prosecuted. If a life sentence is what the State deems an appropriate

punishment for the so called crimes that Jeremy is alleged of having committed, then it is our lives that we are willing to commit to Jeremy's cause and to the cause of all Anons facing prosecution. We will not weary. We will not be discouraged.

We will seek the truth and find justice in unjust laws and the unjust rulings of an unjust State. Hacktivists are not criminals! Jeremy is not alleged of a crime that has not equally exposed the corruption and exploitation of the very State prosecuting him. Lady justice is blind! Where is the justice when those whom she has anointed are just as guilty as those they are prosecuting? Those prosecuting our fellow Anons call Jeremy and those like him a criminal. The means by which the crimes of our State were exposed are, perhaps, illegal but "When injustice becomes law, rebellion becomes duty." With this being said, we beg to argue, what right does Loretta A. Preska have to preside over Jeremy's bail hearing while documents leaked from the very hack Jeremy is accused of having committed show that her husband, Thomas J. Kaveler, was himself a client of Strafor; http://www.anony.ws/i/2012/11/22/Pfrp.png & http://www.anony.ws/i/2012/11/22/uN3YF.png.

Jeremy has been demonized to such an extent that those who know him can not even recognize the person prosecutors portray him as in court while the very person responsible for securing the sanctity of his trial is herself directly associated with the crimes Jeremy is accused of having committed. The truth is great and and wants to be known. The truth is, Jeremy has done no wrong and those determined to prosecute him are guilty. The State is guilty of protecting their own interest, especially in their pursuit to prosecute those they consider dangerous to their agenda. Jeremy Hammond is and will always be a hero and his contributions to the Anonymous collective are and will always be an example for which others will follow. An example for which we, the Anonymous Solidarity Network, will continue to commemorate.

    10        **Tweet** 556

Written by admin Posted in Uncategorized

Comments are closed.

"We're the ones who smash the bars of jails, for our brothers."
We demand a fair trial for Jeremy Hammond!





Applications   Places   System

Thomas J. Kavaler - Mozilla Firefox

File   Edit   View   History   Bookmarks   Tools   Help

Thomas J. Kavaler

www.cahill.com/attorneys/data/379/_pf_printable/style==print



# CAHILL

cahill.com | New York | Washington D.C. | London



## Thomas J. Kavaler
**PARTNER**

212.701.3406 Phone
212.378.2230 Fax
kavaler@cahill.com

**Cahill Gordon & Reindel** LLP
Eighty Pine Street
New York, NY 10005-1702

**Practices:**
Corporate Governance & Investigations
Crisis Advisory & Management
Executive Compensation & Employee
Benefits
Litigation

**Education:**
City College of New York, B.A., 1969
Fordham University School of Law, J.D.,
1972, Editor-in-Chief, *Fordham Law
Review*
New York University, LL.M., Trade

Thomas J. Kavaler is a member of the Firm's Executive Committee and its litigation practice group.

Tom joined Cahill in 1975 after clerking for Judge Milton Pollack of the United States District Court for the Southern District of New York. He became a partner in 1980 and was elected as a Fellow of the International Academy of Trial Lawyers in 1996.

Tom has successfully litigated a variety of high-visibility matters for a roster of leading companies (and their boards, officers and directors) in virtually every major field, including financial services, entertainment, energy, telecommunications, publishing, professional services, insurance, food and agriculture, healthcare and heavy manufacturing.

His practice is as varied as his clientele, with a long track record of victories in commercial litigation, securities, class actions, insurance, intellectual property, antitrust, employment, tax, corporate governance, product liability, contracts and criminal law matters. Tom is recognized as one of the top 25 securities litigators in the U.S. by *Benchmark Litigation* and is recommended by *Chambers USA* and *The Legal 500* in commercial litigation in New York. He is also listed in *Who's Who in American Law* and *Who's Who in America*.

Tom manages jury trials, bench trials, appeals, commercial arbitrations (and other forms of A.D.R.), and administrative and investigatory proceedings throughout the United States. He has served as an arbitrator for the American Arbitration Association, National Association of Securities Dealers, Better Business Bureau, New York Supreme Court and United States District Court for the Southern District of New York.

[Untitled 1.odt - Open...   [new file (~/Desktop) -...   STRATFOR cleartext p...   Thomas J. Kavaler - M...

# ELIZABETH M. FINK
## ATTORNEY AT LAW
### 36 PLAZA STREET,
### BROOKLYN, NY 11238

BY HAND



HON. LORETTA A. PRESKA
UNITED STATES DISTRICT JUDGE
CHIEF US DISTRICT JUDGE
500 PEARL ST
NEW YORK NY 10007